# ORIGINAL

1 LEONARDO M. RAPADAS
  United States Attorney
2 Districts of Guam and Northern Mariana
  Islands
3 RUSSELL C. STODDARD
  First Assistant U.S. Attorney
4 Sirena Plaza, Suite 500
  108 Hernan Cortez Avenue
5 Hagatna, Guam 96910
  Tel: (671) 472-7332
6 Fax: (671) 472-7215
  C. SALVATORE D'ALESSIO, JR.
7 Senior Trial Attorney, Civil Division
  U.S. DEPARTMENT OF JUSTICE
8 Constitutional Torts Staff
  P.O. Box 7146, Ben Franklin Station
9 Washington, D.C. 20044-7146
  Telephone: (202) 616-4168
10 Facsimile: (202) 616-4314

11 Attorneys for Defendant John S. Unpingco

12                 IN THE UNITED STATES DISTRICT COURT

13                              FOR THE

14                       TERRITORY OF GUAM

15

16 SEAN FRANCIS SCHOOL          )  CIVIL CASE NO. 03-000038
   MAFNAS,                       )
17                               )
                                 )
18         Plaintiff,            )  SUGGESTION OF DEATH;
                                 )  Federal Rules of Civil Procedure 25 (a)
19 v.                            )
                                 )
20 JOHN S. UNPINGCO, et al.,     )
                                 )
21         Defendants.           )
                                 )
22                               )
                                 )
23 ───────────────────────────── )

24

25       The United States hereby informs the Court of the death of the plaintiff, SEAN SCHOOL

26 MAFNAS, as evidenced in an attached article from the Pacific Daily News (Attachment A) and a

27 Certificate of Death (Attachment B).  Rule 25(a) of the Federal Rules of Civil Procedure

28 (Fed.R.Civ.P.) provides for the filing of a "suggestion of death" by either of the parties.

FILED
DISTRICT COURT OF GUAM
JUN 2 3 2004
MARY L. M. MORAN
CLERK OF COURT

1 Service on the parties and other interested parties is necessary.

2 In this case the deceased was a pro se plaintiff whose only point of contact (provided by
3 him to this office) was a cell number 689-7556 and a post office box number, Box 25558. located
4 at the Guam Main Facility that was owned by a woman by the name of Ovita Brown who
5 delivered and retrieved documents on his behalf. This method, arranged by plaintiff, will be
6 used to serve this "Suggestion of Death".

7 Successors to plaintiff or any other interested parties have ninety (90) days to file a
8 substitution of party with the court. To assist interested parties, the Fed.R.Civ.P. 25 is
9 reproduced and attached (Attachment C). If no substitution is filed in ninety (90) days, the
10 action shall be dismissed as to the deceased party. A proposed order for the dismissal is included
11 with this filing.

12 This Suggestion of Death is filed this 4th day of June, 2004.

14 LEONARDO M. RAPADAS
United States Attorney
15 Districts of Guam and NMI

17 RUSSELL C. STODDARD
First Assistant U.S. Attorney

19 C. SALVATORE D'ALESSIO, JR.
Senior Trial Attorney, Civil Division
U.S. DEPARTMENT OF JUSTICE
20 Constitutional Torts Staff
P.O. Box 7146, Ben Franklin Station
21 Washington, D.C. 20044-7146
Telephone: (202) 616-4168
22 Facsimile: (202) 616-4314
Attorneys for Defendant
23 John S. Unpingco

- 2 -

# GPD examines shooting

**By Theresa Merto**
*Pacific Daily News*
tmerto@guampdn.com

Guam Police Department investigators continue to pore through evidence and interviews to determine whether officers followed procedures on the use of deadly force after a robbery suspect was shot and killed.

Sean Francis Mafnas School, 32, suffered two fatal gunshot wounds to the chest after a car chase with police that began in Yona and ended on a Tiyan road early Wednesday morning.

School and Michael Kenneth Gimenez, 27, of Yona allegedly robbed the KK Fashion Store in Mangilao at gunpoint and got away with

▲ See **Case**, Page 4



▶ TO THE POINT

▲ Guam Police Department officers continue their investigation into the shooting death of a robbery suspect early Wednesday morning.

*Masako Watanabe/*
*Pacific Daily News/*
*mwatanabe@guampdn.com*

**Charged:** Robbery suspect Michael Gimenez of Yona is escorted by Officers Frank Corpuz, left, Shawn Meno, center, and Scott Arceo of the Guam Police Department's Criminal Investigation Division late Wednesday. Gimenez was charged in court yesterday and is being held on $75,000 bail.



**School in 1993**

## Court records show slew of run-ins with law since '84

**By Steve Limtiaco**
*Pacific Daily News*
slimtiaco@guampdn.com

The man shot and killed by Guam police early Wednesday morning was barely into his teens when he had his first of many run-ins with the law, according to documents at the Superior Court of Guam.

Born in July 1971, Sean Francis Mafnas School, also known as Shawn Mafnas,

▲ See **School**, Page 4

▶ TO THE POINT

▲ Court records document robbery suspect Sean Francis Mafnas School's trail of troubles. School, 32, died early Wednesday morning after he was shot by pursuing police officers.

# Food stamps on debit card soon

**By Katie Worth**
*Pacific Daily News*
worth@guampdn.com

The transition from paper food stamp coupons to electronic food stamp debit cards is in the works and would be complete by June, Department of Public Health and Social Services administrators said.

debit cards, which will be electronically swiped at the checkout, just like a bank debit card. The residents also can use the cards to withdraw cash assistance, but not food stamp money.

Guam will be the last U.S. jurisdiction to make the switch to the card, called the "Electronic Benefits Transfer" system, said Dr. John

▶ TO THE POINT

▲ Of 225 stores that accept food stamp coupons, 118 have applied to switch over to the new electronic food stamp system. Public Health officials said all 7,500 families on Guam

# Students get set to spell

Dozens of bright elementary and middle school children will engage in a tournament of words tomorrow in the Scripps Howard Spelling Bee Regional Competition. Spellers from Guam, Palau and the North-

winner share their thoughts on what it takes to win.

**INSIDE**

▲ **Contestants:** 69 students compete for regional championship.
**Page 2**

er struggled with the officer. He had gunshot wounds to his head, chest...

*Pacific Daily News files*

yesterday afternoon. He is being treated for his injuries.

*Pacific Daily News*

last Christmas morning, the case was set during a criminal trial held at a Department of Corrections facility.

Around 2:45 p.m. Tuesday, a 42-year-old store attendant identified in court documents as Xian Fang Santos was working inside the KK store when School brandished a gun and demanded money, documents state.

The woman, "afraid for her life," complied with the gunman's demands and turned over $400, court documents state. School also allegedly took phone cards from the store.

After ordering the victim not to call police, School left the store and entered a vehicle operated by Kim Gimenez, documents state. Gimenez, according to court documents, is ongoing...

"While driving away, the proceeds of the robbery, as well as the..."



## We want YOU!

The Pacific Daily News wants to hear what you want to read. We're looking for men and women, ages 24 to 35, for a round-table discussion on all kinds of stories, topics and issues you want to see in the PDN's local news and business sections.

Get a free lunch just for sharing your views and needs as a reader with us at an hourlong meeting at noon March 16. Help us better serve you. Send us your name, age, village and daytime contact information.

■ E-mail: news@guampdn.com
■ Fax: 477-3079
■ Call: 477-9711, ext. 414 or ext. 417

## Clearing the record

We care about accuracy. If you would like to clear the record, call the Pacific Daily News at 477-9711, ext. 414.

# School: 'Many others gave up on me'

▶ Continued from Page 1

was described by his Guam Community College mathematics teacher in documents as "an angry, contemptuous student who makes no effort whatsoever," but who nonetheless received a "B" in the class, "because he is intellectually advanced, not because he tries."

In legal trouble for most of his life, many of the charges against School involve theft and illegal possession of firearms and escaping from custody. In one incident, in November 1993, he was charged with assaulting a police officer after he pointed a pistol replica gun at police while being pursued.

Police said School pointed a gun at police sometime during the car chase Wednesday that ultimately led to his death.

The long trail of court cases started in 1984, when School was charged with burglary, possession of stolen firearms, reckless conduct, and failure to possess a firearms identification card.

On Nov. 30, 1984, at the age of 13, School was confined to the Department of Mental Health.

Between 1985 and 1988 he was charged twice with violation of a court order, declared beyond control twice, charged with threatening, charged with robbery and with theft of a motor vehicle.

On Oct. 21, 1986, he was remanded to the Department of Youth Affairs, where he escaped twice in 1987 and once in 1988.

He escaped from DYA again on Feb. 24, 1989, and kidnapped a female bartender at gunpoint the next day.

Documents state the bartender allegedly gained his confidence by promising him she could get him an M-16 assault rifle and ammunition. They drove to her cousin's home, where her cousin also gained School's confidence, got him to hand his pistol over and called police.

Three years later, he was sentenced to five years of probation for his crimes, then three years credit for the time he had served.

His probation was revoked in February 1994 because of the incident in which he pointed a replica gun at a police. He was sentenced to one year for that crime.

gun used were in plain view of the defendant," documents state.

## Investigation continues

Although police did not release any new information in the case yesterday, police spokeswoman Sgt. Kim Santos said the investigation is ongoing.

Five police officers remain on administrative leave pending an Internal Affairs investigation. The department is trying to determine whether the officers followed procedures regarding the use of deadly force in Wednesday's incident.

## Stolen weapons

School escaped from prison on April 28, 1994, and was sentenced to an additional three years behind bars, with two years probation.

School was picked up by police again in April, 1998, after they found him in a lounge in Tamuning with two stolen .45-caliber semiautomatic pistols — one tucked at his waist and one in a holster under his arm. Both pistols had "a number cocked," according to police accounts. The pistols were two of three pistols stolen from Orient Company Inc.

School was released from jail this January after serving a 27-month federal sentence for a 1998 escape.

Documents in federal and local court indicate that School wrote his own legal briefs, alleging civil rights violations by prison officials. His federal judge and federal prosecutors.

The allegations against prison officials were dismissed while the allegations against federal officials are unresolved.

In April 1997, School sent a let-

Santos said.

"When a subject attacks with a weapon or with the intent to do serious physical injury, it may be necessary to use deadly force," Santos said. "The use of deadly force is authorized only when an officer reasonably believes that it is necessary to protect himself or others from an immediate threat of death or serious bodily harm."

Santos said deadly force also may be used to apprehend a fleeing felon.

"A fleeing felon is a person who an officer has reasonable cause to believe has committed a violent felony and is fleeing from the officer," Santos said. Robbery is con-

ter to Judge Benjamin J. Cruz, asking for the judge's help in getting copies of his criminal case files.

School told Cruz that he did not remember some of the events earlier in his life — a memory loss he attributed to medication he was given during off-island treatment. School told the judge in the letter, "I have been off of all medications for quite some time now, and I can fully see many things I once was unable to see, understand, there are still times when I can't remember things but slowly it comes back."

According to court documents, Cruz had presided over School's cases dating back to at least 1985.

"I am therefore respectfully asking you for help as there is no one else who cares enough or is willing to give me a chance, many others gave up on me a long time ago, when they did, you could have but you never stopped believing in me and never gave up," School wrote.

cers are required to go through a six-month law enforcement training course at the Guam Community College and then they go through several more months of orientation at the police department. He said that when to discharge a weapon is one of the main topics and that officers go through an annual firearms qualification.

"As far as the annual firearms qualification for the officers, before they actually shoot on the range, they are briefed again on the use of force policy before they do their qualification," Bordallo said. "And also at each of the precinct levels… their supervisors can conduct roll call training at that level to make sure that officers stay up to par with the policies."

*/704— Fran: This is an "Unofficial Copy!"*

*472-7215*

## GOVERNMENT OF GUAM
### U.S. STANDARD
### CERTIFICATE OF DEATH

FILE NUMBER

TYPE/PRINT IN PERMANENT BLACK INK FOR INSTRUCTIONS SEE OTHER SIDE AND HANDBOOK

**DECEDENT**

| 1. DECEDENT'S NAME (First, Middle, Last) | 2. SEX | 3. DATE OF DEATH (Month, Day, Year) |
|---|---|---|
| SEAN FRANCIS SCHOOL MAFNAS | MALE | MARCH 10, 2004 |

| 4. SOCIAL SECURITY NUMBER | 5a. AGE—Last Birthday (Years) | 5b. UNDER 1 YEAR Months Days | 5c. UNDER 1 DAY Hours Minutes | 6. DATE OF BIRTH (Month, Day, Year) | 7. BIRTHPLACE (City and State or Foreign Country) |
|---|---|---|---|---|---|
| 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 | 32 | | | JULY 10, 1991 | TEXAS |

8. WAS DECEDENT EVER IN U.S. ARMED FORCES? (Yes or no) **NO**

9a. PLACE OF DEATH (Check only one; see instructions on other side)
HOSPITAL: ☐ Inpatient ☒ ER/Outpatient ☐ DOA OTHER: ☐ Nursing Home ☐ Residence ☐ Other (Specify)

| 9b. FACILITY NAME (If not institution, give street and number) | 9c. CITY, TOWN, OR LOCATION OF DEATH | 9d. COUNTY OF DEATH |
|---|---|---|
| U.S. NAVAL HOSPITAL, GUAM | AGANA HEIGHTS | GUAM |

| 10. MARITAL STATUS—Married, Never Married, Widowed, Divorced (Specify) | 11. SURVIVING SPOUSE (If wife, give maiden name) | 12a. DECEDENT'S USUAL OCCUPATION (Give kind of work done during most of working life. Do not use retired.) | 12b. KIND OF BUSINESS/INDUSTRY |
|---|---|---|---|
| NEVER MARRIED | N/A | | |

| 13a. RESIDENCE—STATE | 13b. COUNTY | 13c. CITY, TOWN, OR LOCATION | 13d. STREET AND NUMBER |
|---|---|---|---|
| GUAM | | YONA | |

| 13e. INSIDE CITY LIMITS? (Yes or no) | 13f. ZIP CODE | 14. WAS DECEDENT OF HISPANIC ORIGIN? (Specify No or Yes—If yes, specify Cuban, Mexican, Puerto Rican, etc.) ☒ No ☐ Yes Specify: | 15. RACE—American Indian, Black, White, etc. (Specify) | 16. DECEDENT'S EDUCATION (Specify only highest grade completed) Elementary/Secondary (0-12) College (1-4 or 5+) |
|---|---|---|---|---|
| NO | 96915 | | | |

**PARENTS**

| 17. FATHER'S NAME (First, Middle, Last) | 18. MOTHER'S NAME (First, Middle, Maiden Surname) |
|---|---|
| FRANK TAITANO MAFNAS | PATRICIA MARIE GIMENEZ |

**INFORMANT**

| 19a. INFORMANT'S NAME (Type/Print) | 19b. MAILING ADDRESS (Street and Number or Rural Route Number, City or Town, State, Zip Code) |
|---|---|
| | |

**DISPOSITION**

| 20a. METHOD OF DISPOSITION ☐ Burial ☐ Cremation ☐ Removal from State ☐ Donation ☐ Other (Specify) | 20b. PLACE OF DISPOSITION (Name of cemetery, crematory, or other place) | 20c. LOCATION—City or Town, State |
|---|---|---|

| 21a. SIGNATURE OF FUNERAL SERVICE LICENSEE OR PERSON ACTING AS SUCH | 21b. LICENSE NUMBER (of Licensee) | 22. NAME AND ADDRESS OF FACILITY |
|---|---|---|

**PRONOUNCING PHYSICIAN ONLY**

Complete items 23a-c only when certifying physician is not available at time of death to certify cause of death.

| 23a. To the best of my knowledge, death occurred at the time, date, and place stated. Signature and Title ▶ | 23b. LICENSE NUMBER | 23c. DATE SIGNED (Month, Day, Year) |
|---|---|---|

**ITEMS 24-26 MUST BE COMPLETED BY PERSON WHO PRONOUNCES DEATH**

| 24. TIME OF DEATH | 25. DATE PRONOUNCED DEAD (Month, Day, Year) | 26. WAS CASE REFERRED TO MEDICAL EXAMINER/CORONER? (Yes or no) |
|---|---|---|
| 1:43 A. M | MARCH 10, 2004 | |

**CAUSE OF DEATH**

27. PART I. Enter the diseases, injuries, or complications that caused the death. Do not enter the mode of dying, such as cardiac or respiratory arrest, shock, or heart failure. List only one cause on each line.

| | | Approximate Interval Between Onset and Death |
|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) → a. GUNSHOT WOUNDS (2) OF THE CHEST | DUE TO (OR AS A CONSEQUENCE OF): | MINUTES |
| Sequentially list conditions, if any, leading to immediate cause. Enter UNDERLYING CAUSE (Disease or injury that initiated events resulting in death) LAST b. | DUE TO (OR AS A CONSEQUENCE OF): | |
| c. | DUE TO (OR AS A CONSEQUENCE OF): | |
| d. | | |

| PART II. Other significant conditions contributing to death but not resulting in the underlying cause given in Part I. | 28a. WAS AN AUTOPSY PERFORMED? (Yes or no) | 28b. WERE AUTOPSY FINDINGS AVAILABLE PRIOR TO COMPLETION OF CAUSE OF DEATH? (Yes or no) |
|---|---|---|
| | YES | YES |

| 29. MANNER OF DEATH ☐ Natural ☐ Pending Investigation ☐ Accident ☐ Suicide ☐ Could not be Determined ☒ Homicide | 30a. DATE OF INJURY (Month, Day, Year) 03/10/2004 | 30b. TIME OF INJURY AFTER 12:30A M | 30c. INJURY AT WORK? (Yes or no) NO | 30d. DESCRIBE HOW INJURY OCCURRED SHOT DURING POLICE CHASE |
|---|---|---|---|---|

| 30e. PLACE OF INJURY—At home, farm, street, factory, office building, etc. (Specify) AT ROAD | 30f. LOCATION (Street and Number or Rural Route Number, City or Town, State) BARRIGADA, GUAM |
|---|---|

**CERTIFIER**

31a. CERTIFIER (Check only one)
☐ CERTIFYING PHYSICIAN (Physician certifying cause of death when another physician has pronounced death and completed item 23) To the best of my knowledge, death occurred due to the cause(s) and manner as stated.

☐ PRONOUNCING AND CERTIFYING PHYSICIAN (Physician both pronouncing death and certifying to cause of death) To the best of my knowledge, death occurred at the time, date, and place, and due to the cause(s) and manner as stated.

☒ MEDICAL EXAMINER/CORONER On the basis of examination and/or investigation, in my opinion, death occurred at the time, date, and place, and due to the cause(s) and manner as stated.

| 31b. SIGNATURE AND TITLE OF CERTIFIER ▶ | 31c. LICENSE NUMBER M-1038 | 31d. DATE SIGNED (Month, Day, Year) MARCH 12, 2004 |
|---|---|---|

| 32. NAME AND ADDRESS OF PERSON WHO COMPLETED CAUSE OF DEATH (ITEM 27) (Type/Print) AURELIO A. ESPINOLA, M.D. (CME) #325 DUENAS DRIVE TAMUNING, GUAM 96913 |
|---|

**REGISTRAR**

| 33. REGISTRAR'S SIGNATURE ▶ Carolyn R Garrido | 34. DATE FILED (Month, Day, Year) MAR 18 2004 |
|---|---|

need for notice. For this reason, the failure of a party to call the court's attention to the matter cannot be treated as a waiver.

## Rule 25. Substitution of Parties

### (a) Death.

(1) If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of a summons, and may be served in any judicial district. Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

(2) In the event of the death of one or more of the plaintiffs or of one or more of the defendants in an action in which the right sought to be enforced survives only to the surviving plaintiffs or only against the surviving defendants, the action does not abate. The death shall be suggested upon the record and the action shall proceed in favor of or against the surviving parties.

### (b) Incompetency.

If a party becomes incompetent, the court upon motion served as provided in subdivision (a) of this rule may allow the action to be continued by or against the party's representative.

### (c) Transfer of Interest.

In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. Service of the motion shall be made as provided in subdivision (a) of this rule.

### (d) Public Officers; Death or Separation from Office.

(1) When a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party, but any misnomer not affecting the substantial rights of the parties shall be disregarded. An order of substitution may be entered at any time, but the omission to enter such an order shall not affect the substitution.

(2) A public officer who sues or is sued in an official capacity may be described as a party by the officer's official title rather than by name; but the court may require the officer's name to be added.

(As amended Dec. 29, 1948, eff. Oct. 20, 1949; Apr. 17, 1961, eff. July 19, 1961; Jan. 21, 1963, eff. July 1, 1963; Mar. 2, 1987, eff. Aug. 1, 1987.)

### ADVISORY COMMITTEE NOTES

#### 1937 Adoption

**Note to Subdivision (a).** 1. The first paragraph of this rule is based upon [former] Equity Rule 45 (Death of Party—Revivor) and U.S.C., Title 28, former § 778 (Death of parties; substitution of executor or administrator). The *scire facias* procedure provided for in the statute cited is superseded and the writ is abolished by Rule 81(b). Paragraph two states the content of U.S.C., Title 28, former § 779 (Death of one of several plaintiffs or defendants). With these two paragraphs compare generally *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 17, r.r. 1–10.

2. This rule modifies U.S.C., Title 28, [former] §§ 778 (Death of parties; substitution of executor or administrator), 779 (Death of one of several plaintiffs or defendants), and 780 (Survival of actions, suits, or proceedings, etc.), in so far as they differ from it.

**Note to Subdivisions (b) and (c).** These are a combination and adaptation of N.Y.C.P.A. (1937) § 83 and Calif.Code Civ.Proc. (1937) § 385; see also 4 Nev.Comp.Laws (Hillyer, 1929) § 8561.

**Note to Subdivision (d).** With the first and last sentences compare U.S.C.A., Title 28, former § 780 (Survival of actions, suits, or proceedings, etc.). With the second sentence of this subdivision compare *Ex parte La Prade*, 1933, 53 S.Ct. 682, 289 U.S. 444, 77 L.Ed. 1311.

#### 1948 Amendment

The amendment effective October 19, 1949, inserted the words, "the Canal Zone, a territory, an insular possession," in the first sentence of subdivision (d), and, in the same sentence, after the phrase "or other governmental agency," deleted the words, "or any other officer specified in the Act of February 13, 1925, c. 229, § 11 (43 Stat. 941), formerly section 780 of this title."

#### 1961 Amendment

**Subdivision (d)(1).** Present Rule 25(d) is generally considered to be unsatisfactory. 4 Moore's *Federal Practice* ¶25.01[7] (2d ed. 1950); Wright, *Amendments to the Federal Rules: The Function of a Continuing Rules Committee*, 7 Vand.L.Rev. 521, 529 (1954); *Developments in the Law—Remedies Against the United States and Its Officials*, 70 Harv.L.Rev. 827, 931–34 (1957). To require, as a condition of substituting a successor public officer as a party to a pending action, that an application be made with a showing that there is substantial need for continuing the litigation, can rarely serve any useful purpose and fosters a burdensome formality. And to prescribe a short, fixed time period for substitution which cannot be extended even by agreement, see *Snyder v. Buck*, 340 U.S. 15, 19 (1950), with the penalty of dismissal of the action, "makes a trap for unsuspecting litigants which seems unworthy of a great government." *Vibra Brush Corp. v. Schaffer*, 256 F.2d 681, 684 (2d Cir.

**Complete Annotation Materials, see Title 28 U.S.C.A.**

**ATTACHMENT C**